

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00337-CV

LIBERTY BANK, F.S.B.                                                                    APPELLANT

V.

ANDREW B. ETTER D/B/A                                                              APPELLEE
ANDREW B. ETTER LAW OFFICES

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

In four issues, Appellant Liberty Bank, F.S.B. challenges a summary judgment granted in favor of Appellee Andrew B. Etter d/b/a Andrew B. Etter Law Offices. The sole issue we decide is whether an Iowa judgment obtained by Liberty Bank (as assignee of an equipment rental agreement between NorVergence, Inc. and Etter) may be given effect in Texas when, prior to entry of

---

[1]*See* Tex. R. App. P. 47.4.

the Iowa judgment, the 270th District Court of Harris County declared all equipment rental agreements procured between NorVergence and Texas consumers to be void *ab initio* as a result of a Deceptive Trade Practices Act (DTPA) suit filed by the Texas Attorney General.[2] Because the equipment rental agreement upon which Liberty Bank sued Etter was void *ab initio* and was unenforceable against Etter, we will affirm the trial court's summary judgment for Etter.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Equipment Rental Agreement

In April 2004, a representative from NorVergence contacted Etter at his place of business concerning the purchase of a telecommunications system that would offer cellular service at a lower price than his then-existing telephone carrier. The NorVergence representative explained that the new patented technology in their telecommunications system involved the use of a device called a "Matrix" box that could deliver both landline and cellular services. Etter executed an "Equipment Rental Agreement" (ERA) with NorVergence. Under the terms of the ERA, Etter agreed to make monthly rental payments of $290.69, including taxes, for sixty months. After NorVergence installed a Matrix in Etter's

---

[2]The judgment states, "All Equipment Rental Agreements or other contracts procured between NorVergence and Texas consumers or between finance companies and Texas consumers as a result of a NorVergence solicitation directed to any Texas consumer are the result of deceptive and unfair practices and fraud on the part of NorVergence and, therefore, are declared void *ab initio* and are unenforceable."

office, he inquired whether the equipment was operational and was told that it would be "hooked up" to the phone line in a few days. According to Etter, the Matrix was never completely installed and has never provided telephone service.

In May 2004, NorVergence assigned the ERA to Liberty Bank. The assignment contained a clause stating that any action or proceeding relating in any manner to the assignment must be brought in court in Polk County, Iowa.

In June 2004, an involuntary bankruptcy petition was filed against NorVergence in New Jersey.

In August 2004, Liberty Bank notified Etter that he was in default under the ERA. Thereafter, multiple, successive lawsuits involving NorVergence's ERAs commenced in several jurisdictions. We need not detail all the different lawsuits or the filings in those lawsuits, which are well known to the parties, in order to reach our decision. Instead, we set forth only the pertinent procedural history necessary for the disposition of this appeal.

### B. The Texas Attorney General Sues NorVergence in Harris County

On November 18, 2004, the Texas Attorney General filed suit against NorVergence, Inc. in the 270th District Court of Harris County on behalf of 1,020 Texas small businesses that were victims of NorVergence's fraud and deceptive acts and practices. The following day, the Texas Attorney General notified Liberty Bank by letter,

> The Texas Attorney General has learned that your company is demanding payments from Texas small business consumers on agreements purchased from NorVergence, the New Jersey company

3

now in Chapter 7 bankruptcy in New Jersey. We have reason to believe that these agreements are based on fraud and should be voided.

Please respond promptly to the attached Civil Investigative Demand. In the meantime, we request that you immediately cease all efforts to collect on agreements purchased from NorVergence until such time as there is a determination as to whether they are enforceable.

Continuing to attempt collection efforts on agreements secured by fraud could subject your company to substantial penalties under Texas law.

On April 29, 2005, the Harris County court granted the Texas Attorney General a default judgment against NorVergence. The default judgment stated that all contracts or agreements between NorVergence and Texas consumers, businesses, or persons "are hereby declared void *ab initio* and unenforceable." The default judgment further enjoined NorVergence and any other person in active concert or participation with NorVergence from enforcing, attempting to enforce, collecting, or attempting to collect any monies purportedly owed under any NorVergence ERA from any Texas consumer, business, or entity. In a letter dated June 6, 2005, Liberty Bank informed Etter that it was aware of this judgment.

## C. Liberty Bank Sues Etter in Iowa

Shortly before the Texas Attorney General brought suit in Harris County, Liberty Bank instituted proceedings against Etter in Iowa in October 2004. Almost four years later, on July 15, 2008, the Iowa court granted Liberty Bank's motion for summary judgment.

4

### D.  Etter Sues Liberty Bank in Tarrant County Court at Law Number Three

One day before the Iowa court issued its judgment, Etter sued Liberty Bank in Tarrant County Court at Law Number Three, seeking a declaratory judgment that the NorVergence ERA was void and unenforceable.  That same day, County Court at Law Number Three issued a temporary restraining order restraining NorVergence, Inc.; NorVergence Capital, L.L.C.; and Liberty Bank, F.S.B. from taking any action to collect or attempt to collect monies from Etter, including any further proceedings in the Iowa suit, and from taking any action to enforce the ERA.

### E.  Liberty Bank Sues Etter in Tarrant County Court at Law Number One

Four months later, in November 2008, in Tarrant County Court at Law Number One, Liberty Bank filed notice pursuant to the Uniform Enforcement of Foreign Judgment Acts of its intent to enforce the Iowa judgment.  Etter filed a motion to vacate the judgment or stay its enforcement, asking that the Iowa judgment be vacated and declared null and void.  Etter also filed a motion to consolidate the two county court at law cases.  The parties later agreed to transfer Liberty Bank's suit in County Court at Law Number One to County Court at Law Number Three.

### F.  The Consolidated Tarrant County Cases

The parties filed competing motions for summary judgment.  The trial court ultimately denied Liberty Bank's motion for summary judgment and granted Etter's motion for summary judgment, finding that "there is no question of

5

material fact necessary to establish that the actions of the 270th Judicial District Court of the State of Texas rendered the contract upon which Defendant brought suit in Iowa void and thus deprived the Iowa court of subject matter jurisdiction." This appeal followed.

### III. ETTER CONCLUSIVELY ESTABLISHED HIS RIGHT TO SUMMARY JUDGMENT AS A MATTER OF LAW

Etter moved for summary judgment on the ground that the 270th District Court of Harris County had declared void *ab initio* and unenforceable the ERAs procured between NorVergence and Texas consumers or between finance companies and Texas consumers, including the ERA that Liberty Bank relied upon in its suit against Etter.[3]  Etter's summary judgment evidence included the default judgment the Texas Attorney General obtained against NorVergence in the 270th District Court of Harris County; the November 2004 letter that the Texas Attorney General sent to Liberty Bank regarding the lawsuit in Harris County, along with the "Civil Investigative Demand" that the letter referenced; and Etter's affidavit, which stated that Liberty Bank was aware of the Harris County judgment.  In its first issue, Liberty Bank argues that the trial court erred by granting Etter's motion for summary judgment because Etter's summary judgment proof is insufficient and does not overcome the Iowa judgment's full-faith-and-credit presumption of validity.

---

[3]Etter's motion to vacate the Iowa judgment or to stay its enforcement, filed in response to Liberty Bank's attempt to domesticate the Iowa judgment, also raised this exact point.

6

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

7

The Texas Attorney General is specifically authorized to bring an action in the public interest against an entity it believes is engaged in conduct prohibited by the DTPA. Tex. Bus. & Com. Code Ann. § 17.47(a) (West 2011); *Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469, 471 (Tex. App.—Austin 1994, writ denied). One of the purposes of enforcement of the DTPA by the attorney general is to prevent a multiplicity of suits. *Bara*, 876 S.W.2d at 472. Here, the Texas Attorney General did just that and obtained a final judgment from the 270th District Court of Harris County declaring that all NorVergence ERAs were obtained in violation of the DTPA and were void *ab initio*.

Liberty Bank complains that although it had actual knowledge of the Texas suit and the judgment signed by the 270th District Court of Harris County, it was not served with process in the Texas lawsuit and therefore cannot be bound by the Texas judgment. NorVergence assigned its ERA with Etter to Liberty Bank; as an assignee, Liberty Bank stands in the shoes of NorVergence. *See, e.g.*, *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (stating that "[i]t is axiomatic that an assignee or subrogee walks in the shoes of his assignor"). The fact that Liberty Bank, as NorVergence's assignee, was not served with process in the Texas Attorney General's DTPA suit does not result in Liberty Bank's possessing more rights than its assignor, NorVergence. That is, Liberty Bank's rights are dictated by its status as an assignee; because NorVergence's ERA with Etter was void *ab initio* and because NorVergence

8

possesses no right to enforce the ERA, NorVergence's assignee Liberty Bank likewise possesses no right to enforce the ERA against Etter. *See id.*

Liberty Bank also argues that because NorVergence assigned Etter's ERA to Liberty Bank before NorVergence's bankruptcy, Liberty Bank's assignment falls within an exception in the judgment and is still enforceable. In making this argument, Liberty Bank focuses on one part of the judgment providing that NorVergence consumer financing agreements assigned to a third party after those contracts were rejected in the bankruptcy case were void and uncollectible by any person or entity. This portion of the judgment cannot, however, be read in isolation; when read as a whole, the judgment's declaration that all NorVergence's ERAs are void *ab initio* is not temporally limited. To the contrary, another provision of the judgment enjoins NorVergence and "*any other person in active concert or participation with*" NorVergence from "[e]nforcing, attempting to enforce, collecting, or attempting to collect any monies purportedly owed *under any NorVergence equipment rental agreement* from any Texas consumer, business[,] or entity." [Emphasis added.]

Liberty Bank also argues that Etter was not entitled to summary judgment because Texas courts must give full faith and credit to the Iowa judgment. But Liberty Bank has not cited any cases in support of this proposition that present facts comparable to the current facts. A Texas court found Etter's ERA with NorVergence void *ab initio* before the Iowa court signed a summary judgment for Liberty Bank as assignee of NorVergence's ERA with Etter that purported to

9

enforce the ERA against Etter. Liberty Bank has not cited, and we are not aware of, any authority that Liberty Bank's full-faith-and-credit argument applies to the present facts. As indicated by the trial court, "[a]s a matter of public policy[,] an action such as that pursued by the Attorney General in the discharge of his [c]onstitutional obligations must be given effect." *See* Tex. Const. art. IV, § 2.

Liberty Bank further argues that Etter did not timely attack the Iowa judgment. But a void judgment, such as the one here, can be collaterally attacked at any time. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). The record reveals that Etter has been attempting to stop Liberty Bank's efforts to enforce the void *ab initio* ERA since June 2005, when he originally filed suit in Tarrant County Court at Law Number Three requesting a temporary restraining order that would enjoin Liberty Bank from proceeding with attempts to collect monies from him and from proceeding with the suit against him in Iowa, and that he re-filed suit the day before the Iowa judgment was signed. We therefore conclude that under *Rivera* and the record presented here, Etter timely attacked the Iowa judgment as void *ab initio*. *See id.*

In summary, considering Etter's summary judgment evidence in the light most favorable to Liberty Bank as the nonmovant, crediting evidence favorable to Liberty Bank if reasonable jurors could, and disregarding evidence contrary to Liberty Bank unless reasonable jurors could not, we hold that Etter conclusively established that he was entitled to summary judgment because the ERA assigned to Liberty Bank that it sought to enforce against him was void *ab initio*

10

and unenforceable. *See Fielding*, 289 S.W.3d at 848; *Chau*, 254 S.W.3d at 455. Because Etter established his right to summary judgment on this basis, we need not address the grounds for summary judgment presented in Liberty Bank's competing motion for summary judgment. We overrule Liberty Bank's first issue, which is dispositive of the appeal. *See* Tex. R. App. P. 47.1 (stating that appellate court needs to address every issue necessary for final disposition of the appeal).

## IV. CONCLUSION

Having overruled Liberty Bank's first issue, which is dispositive of the appeal, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: September 19, 2013

11